IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DARWIN CELSO CUYA-PRIALE,

    Petitioner,

v.                                                                                       No. 2:25-cv-01166-KG-DLM

DORA CASTRO, et al.,

    Respondents.

## TEMPORARY RESTRAINING ORDER

This matter is before the Court on Darwin Celso Cuya-Priale's Motion for a Temporary Restraining Order ("TRO"). *See* Doc. 2. The Court held a hearing on the motion December 5, 2025, at which time the Court continued the matter until December 12, 2025, to provide the Government with the opportunity to respond. Doc. 10. The Court also enjoined the Government from transferring Mr. Cuya-Priale from the Otero County Processing Center while these proceedings remain pending. Doc. 8. As of the date of this order, no written answer has been filed, but the Government appeared at the December 21, 2025, hearing. For the reasons below, the Court grants the motion and issues a TRO requiring the Government to release Mr. Cuya-Priale immediately.

*I.    Background*

Mr. Cuya-Priale, a 28-year-old Peruvian citizen, entered the United States in September 2021. Doc. 1 at 2. Upon entry, Immigration and Customs Enforcement ("ICE") detained him and placed him in removal proceedings. *Id.* The Department of Homeland Security ("DHS") released Mr. Cuya-Priale when he filed an asylum claim based on alleged forced labor in Peru. *Id.* On December 1, 2023, an Immigration Judge ("IJ") held a hearing and found him credible

1

but denied him asylum.  *Id.*  Mr. Cuya-Priale appealed the IJ's ruling in January 2024.  *Id.*  That appeal remains pending with the Board of Immigration Appeals ("BIA").  *Id.*   For the past four years, he has remained compliant with his conditions of release and has no criminal record.  *Id.*  He lives with his significant other in the state of Washington.  Doc. 2 at 6.

On October 9, 2025, ICE arrested Mr. Cuya-Priale during a routine check-in.  Doc. 2 at 5.  ICE detained Mr. Cuya-Priale for a month in Tacoma, Washington before transferring him to Otero County Processing Center ("OCPC") in New Mexico.  Doc. 1 at 2.

Mr. Cuya-Priale alleges that ICE "violated the Due Process Clause of the Fifth Amendment" by redetaining him without giving him written notice or a hearing.  *Id.* at 11.  He argues that because the Government released him on bond in 2021, the Government must provide him with "a hearing before a neutral decisionmaker" before detaining him again.  *Id.* at 7.  On that basis, Mr. Cuya-Priale seeks immediate release.  Doc. 1.  He also seeks to enjoin the Government from (a) removing him while this case or his appeal is pending; (b) transferring him from OCPC to any facility other than an ICE center in Washington; (c) redetaining him absent clear and convincing evidence of danger or flight risk; and (d) imposing post-release monitoring or supervision.  Doc. 2 at 7.  The Government has not yet entered an appearance or filed a response to Mr. Cuya-Priale's TRO motion.

II.     *Standard of Review*

A TRO "preserve[s] the status quo [ante]" before a final decision on the merits.  *Resolution Trust v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992).  The status quo is "the last peaceable uncontested status…before the dispute developed."  *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019).  A petitioner seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

2

the absence of preliminary relief," and that the balance of equities and public interest favor relief. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "[A]ll four of the equitable factors weigh in" the petitioner's favor, *Sierra Club. v. Bostick,* 539 Fed. App'x 885, 888 (10th Cir. 2013), but "[t]he likelihood-of-success and irreparable-harm factors are the most critical." *People's Trust Fed. Credit Union v. Nat'l Credit Union*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018). "[R]egardless of whether or not notice is provided," a TRO "should not exceed the maximum time allowed by" Rule 65, which is 28 days, "absent consent of the opposing party." *Isler v. New Mexico Activities*, 2010 WL 11623621, at *3 (D.N.M.).

III.     Analysis

For the reasons below, the Court concludes that (A) Mr. Cuya-Priale is likely to succeed on the merits, (B) he will suffer irreparable harm without injunctive relief, and (C) the balance of equities and the public interest favor relief.

    A.     *Mr. Cuya-Priale is likely to succeed on the merits of his claims.*

The Court, first, holds that Mr. Cuya-Priale is likely to succeed on his claim that his redetention violates the Fifth Amendment's Due Process Clause because he has a protected liberty interest in remaining free from civil detention and was deprived of that interest without constitutionally adequate process.

"Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution." *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

3

Here, there is a substantial likelihood that Mr. Cuya-Priale holds a protected liberty interest. Once released from immigration detention, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Lopez-Arevelo v. Ripa*, 2025 WL 2691828, at *11 (W.D. Tex.); *see also Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.) (same); *Diaz v. Kaiser*, 2025 WL 1676854, at *2 (N.D. Cal.) (same). Mr. Cuya-Priale's prior release from custody enabled "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Indeed, Mr. Cuya-Priale was released from immigration custody four years ago and lives with his domestic partner in Washington. Doc. 2 at 6.

Second, Mr. Cuya-Priale is entitled to procedural safeguards to protect his liberty interest. The Court considers (1) "the private interest" at stake; (2) "the risk of erroneous deprivation" through "the procedures used, and the probable value of additional or substitute procedural safeguards"; and (3) "the Government's interest" including the "fiscal and administrative burdens" of additional safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To start, Mr. Cuya-Priale's private interest in remaining free from detention is substantial. "Freedom from imprisonment…lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Mr. Cuya-Priale was free from custody for more than four years before he was redetained. Doc. 2 at 2.

Next, there is a significant risk of erroneous deprivation. Although DHS may revoke release "at any time," 8 U.S.C. § 1226(b), courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before such revocation. *Y.M.M. v. Wamsley*, 2025 WL 3101782, at *2 (W.D. Wash.); *see, e.g.*, *Valdez v. Joyce*, 2025 WL 1707737, at *3 n.6 (S.D.N.Y.); *Singh v. Andrews*, 2025 WL 1918679,

4

at *7 (E.D. Cal.). Mr. Cuya-Priale was redetained after four years without a bond hearing. Doc. 2 at 2. The hearing would have addressed whether any relevant facts have changed as to Mr. Cuya-Priale's danger to the community or flight-risk. *Id.* He has therefore sufficiently demonstrated that the Government erroneously deprived him of his protected liberty interest.

Last, the Government's interest in detaining Mr. Cuya-Priale without a hearing is low. For four years, Mr. Cuya-Priale has complied with every release condition, *id.*, and the burden of providing him with procedural safeguards is minimal. *See Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at *10 (W.D. Tex.) (holding that cost of providing bond determination to noncitizen is not "terribly burdensome"). Mr. Cuya-Priale therefore demonstrated a substantial likelihood of success on the merits of his due process claim.

B.   *Mr. Cuya-Priale will face irreparable harm without injunctive relief.*

Mr. Cuya-Priale also proved that his detention caused irreparable harm, as "infringement of a constitutional right" is per se irreparable harm. *Free the Nipple*, 916 F.3d at 805.

C.   *The equities and public interest favor relief.*

Any burden on the Government to release Mr. Cuya-Priale from custody and hold a pre-deprivation hearing is minimal compared to the harm that Mr. Cuya-Priale is suffering in detention. While the Government has an interest in securing Mr. Cuya-Priale's appearance at immigration proceedings, detention has been unnecessary to carry out that interest—Mr. Cuya-Priale complied with his release conditions for four years. Doc. 2 at 2. Indeed, on October 9, 2025, Mr. Cuya-Priale showed up to a routine check-in where he was redetained. *Id.* "Faced with a choice between minimally costly procedures and preventable human suffering," the "balance of hardships tips decidedly in [P]etitioner's favor." *Singh v. Andrews*, 2025 WL 1918679, at *7 (E.D. Cal.); *see also Domingo*, 2025 WL 2941217, at *4 (same). The public

interest also weighs in Mr. Cuya-Priale's favor; it is "not in the public's interest to allow unexplained detention." *Domingo*, 2025 WL 2941217, at *4.

*IV.     Conclusion*

Mr. Cuya-Priale has satisfied the procedural requirements for issuance of a temporary restraining order. The Government appeared through counsel at the hearing and were heard. The Government therefore received sufficient notice of Mr. Cuya-Priale's motion. *See* Fed. R. Civ. P. 64 (b) (1) ("[W]ritten or oral notice" suffices to provide "the adverse party" notice of a TRO). The status quo ante is the position Mr. Cuya-Priale occupied prior to his redetention by ICE, and this Order restores and preserves that posture pending further proceedings. IT IS THEREFORE ORDERED that:

1. Mr. Cuya-Priale's TRO motion (Doc. 2) is GRANTED.
2. The Government is ORDERED to release Mr. Cuya-Priale within 24 hours of this order. Upon release, the Government may not subject Mr. Cuya-Priale to post-release monitoring or supervision that not in place before his redetention or prohibit him from returning to Washington state.
3. The Government is restrained from redetaining Mr. Cuya-Priale unless it demonstrates, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Mr. Cuya-Priale is a danger or flight risk.
4. The Government shall file a response no later than seven (7) days from the date of this Order, addressing any objections to injunctive relief and responding to the merits of the habeas petition. Mr. Cuya-Priale may file a reply within seven (7) days thereafter.
5. Upon completion of briefing, the Court will schedule a consolidated hearing on the motion for a preliminary injunction and the habeas petition.

6. This order shall remain in effect for 28 days for good cause shown. *See* Fed. R. Civ. P. 65(b)(2).

7. Given the important constitutional rights at stake for Mr. Cuya-Priale, the Court finds that no bond is required. *See Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (providing district courts with "wide discretion under Rule 65(c)" to determine "whether to require security").

IT IS SO ORDERED.

/s/ Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.