IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DARWIN CELSO CUYA-PRIALE,

    Petitioner,

v.                                             No. 2:25-cv-01166-KG-DLM

DORA CASTRO, et al.,

    Respondents.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Darwin Celso Cuya-Priale's Petition for a Writ of Habeas Corpus, Doc. 1. Following a hearing, the Court issued a Temporary Restraining Order ("TRO") directing the Government to release Mr. Cuya-Priale. Doc. 11. The TRO expires on January 9, 2025. *Id.* at 6. Although the TRO required the Government to respond to the habeas petition within seven days, *id.* at 6, the Government has not filed a response. For the reasons below, the Court grants the petition.

I.    *Background*

Mr. Cuya-Priale, a 28-year-old Peruvian citizen, entered the United States in September 2021. Doc. 1 at 2. Upon entry, Immigration and Customs Enforcement ("ICE") detained him and placed him in removal proceedings. *Id.* The Department of Homeland Security ("DHS") released Mr. Cuya-Priale when he filed an asylum claim based on alleged forced labor in Peru. *Id.* On December 1, 2023, an Immigration Judge ("IJ") held a hearing and found him credible but denied his claim for asylum. *Id.* Mr. Cuya-Priale appealed the IJ's ruling in January 2024. *Id.* That appeal remains pending with the Board of Immigration Appeals ("BIA"). *Id.* For the

1

past four years, he has remained compliant with his conditions of release and has no criminal record.  *Id.*  He lives with his significant other in Washington state.  Doc. 2 at 6.

On October 9, 2025, ICE arrested Mr. Cuya-Priale during a routine check-in.  Doc. 2 at 5.  ICE detained Mr. Cuya-Priale for a month in Tacoma, Washington, before transferring him to Otero County Processing Center ("OCPC") in New Mexico.  Doc. 1 at 2.  Mr. Cuya-Priale alleges that ICE "violated the Due Process Clause of the Fifth Amendment" by redetaining him without giving him written notice or a hearing.  *Id.* at 11.  He argues that because the Government released him on bond, it must provide him with "a hearing before a neutral decisionmaker" before detaining him again.  *Id.* at 7.

## II.     Standard of Review

A petition for a writ of habeas corpus seeks "release from unlawful physical confinement."  *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973).  Habeas corpus review is available under § 2241 if a noncitizen is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see also Zadvydas*, 533 U.S. at 687.

## III.    Analysis

For the reasons below, the Court finds that (A) 8 U.S.C. § 1226 governs Mr. Cuya-Priale's detention, (B) Mr. Cuya-Priale's detention violates his right to due process, and (C) the proper remedy is a bond hearing where the Government bears the burden of proof.

### A.     Section 1226 governs Mr. Cuya-Priale's detention.

The Immigration and Nationality Act ("INA") establishes distinct detention regimes depending on whether a noncitizen is "seeking admission" to the United States.  *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018).  Section 1225(b)(2)(A) applies to "applicant[s] for admission" who are "seeking admission" and "not clearly and beyond a doubt entitled to be

admitted." The "provision mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.) (Gonzales, J.). By contrast, § 1226(a) authorizes the arrest and detention, "on a warrant issued by the Attorney General," of noncitizens "pending a decision on whether [they are] to be removed." § 1226(a). "Under federal regulations, noncitizens detained under this second detention regime are entitled to individualized bond hearings at the outset of detention." *Pu Sacvin*, 2025 WL 3187432, at *1.

Consistent with the overwhelming majority of district courts to consider the issue and this Court's prior findings, the Court finds that § 1226 governs here. *See Barco Mercado v. Francis*, 2025 WL 3295903, at *13 (S.D.N.Y.) (collecting 362 district-court opinions nationwide and noting that challengers prevailed in at least 350 of them, in decisions by over 160 judges across about fifty courts); *Pu Sacvin*, 2025 WL 3187432 (Gonzales, J.); *Danierov v. Noem*, 2026 WL 45288, at *2 (D.N.M.) (Gonzales, J.). The Court begins with the plain text and structure of §§ 1225 and 1226. Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "who has not been admitted or who arrives in the United States," while § 1225(b)(2)(A) applies only to those "seeking admission." The statute thus distinguishes between the broader category of "applicants for admission" and the narrower subset "seeking admission," which refers to noncitizens who have not "effected an entry" into the United States. *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Noncitizens who entered the country years earlier are not "seeking admission" and fall under § 1226. *Pu Sacvin*, 2025 WL 3187432, at *3.

Mr. Cuya-Priale had already affected an entry and was not seeking admission at the time of his October 9 arrest, and so § 1226(a) governs his detention. Mr. Cuya-Priale entered the United States in 2021 and was released on his own recognizance and he was rearrested within the interior of the United States—in Tacoma, Washington. *Id.* at 5, 6.

3

B.     *Mr. Cuya-Priale's detention violates his right to due process.*

Courts analyze due process claims in two steps: first, whether there exists "a protected liberty interest under the Due Process Clause," and second, whether the procedures used to deprive that interest "accord with the Constitution." *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.).

Here, Mr. Cuya-Priale has a protected liberty interest. Once released from immigration detention, noncitizens acquire "a protectable liberty interest in remaining out of custody on bond." *Danierov*, 2026 WL 45288, at *2. Mr. Cuya-Priale's prior release allowed "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Indeed, Mr. Cuya-Priale was released from immigration custody four years ago and lives with his domestic partner in Washington state. Doc. 2 at 6.

Mr. Cuya-Priale was also entitled to procedural safeguards before he was redetained. In determining what process is due, courts consider (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To start, Mr. Cuya-Priale's private interest in remaining free from detention is substantial. "Freedom from imprisonment...lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

There is also a significant risk of erroneous deprivation. Although DHS may revoke release "at any time," courts require "a material change in circumstances as to whether the noncitizen poses a danger to the community or an unreasonable risk of flight" before revoking

4

release. *Danierov*, 2026 WL 45288, at *2. Mr. Cuya-Priale was redetained after four years without a bond hearing. Doc. 2 at 3. No assessment was made as to whether any material facts had changed, creating a substantial risk of erroneous deprivation of his liberty interest.

Finally, the Government's interest in detaining Mr. Cuya-Priale without a hearing is limited. Mr. Cuya-Priale complied with all conditions of release for four years, *id.*, and the administrative burden of providing a bond hearing is minimal. *See Danierov*, 2026 WL 45288, at *2 (the "cost of providing a bond determination is not terribly burdensome").

C. *The remedy is a bond hearing where the Government bears the burden of proof.*

The proper habeas remedy is a prompt bond hearing at which the Government must prove, by clear and convincing evidence, that Mr. Cuya-Priale is a flight risk or danger to the community. Although "under normal circumstances, the burden" at a § 1226 hearing "is on the noncitizen" to show that detention is unwarranted, Mr. Cuya-Priale's "unlawful detention in violation of his constitutional rights shifts that burden to the Government." *Pu Sacvin*, 2025 WL 3187432, at *3. A noncitizen's "strong private interest in being free from civil detention" outweighs the Government's "comparatively minimal burden to justify custody." *Id.*

IV. Conclusion

The Court therefore grants Mr. Cuya-Priale's petition, Doc. 1. The Court orders the Government to provide him with a bond hearing § 1226(a), before an IJ within seven days of the date of this Order. At that hearing, the Government bears the burden of justifying Mr. Cuya-Priale's redetention by clear and convincing evidence. If the Government fails to hold a bond hearing, Mr. Cuya-Priale shall remain at liberty.

The Court also orders the Government to file a status report within ten days of this Order certifying compliance. The status report must include whether the bond hearing occurred, whether bond was granted, and, if bond was denied, the reasons for the denial.

IT IS SO ORDERED

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.